# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-02748-WYD-NYW

COLORADO CASUALTY INSURANCE COMPANY, a New Hampshire corporation,

Plaintiff,

v.

INFINITY LAND CORPORATION, a dissolved Colorado corporation;
H2 LAND CO, LLC, a dissolved Colorado limited liability company;
HOWARD FAMILY INVESTMENTS, LLC, a dissolved Colorado limited liability company;
JONATHAN HOWARD;
PAUL HOWARD;
KF 103 CV, LLC, a Colorado limited liability company;
WILLIAM MARCHANT;
MAUREEN MARCHANT;
WILLIAM E. HOWELL, as Successor Trustee of the MARILYN J. HOWELL TRUST;
C. ARLENE NANCE;
WILLIAM PECK;
DARRELL H. OLIVER;
KELLY ANN OLIVER; and
SUSAN HANSON.
Defendants.

---

## INFINITY DEFENDANTS' CROSS-MOTION
## FOR PARTIAL SUMMARY JUDGMENT

---

Defendants Infinity Land Corporation ("Infinity Land") and Paul Howard (collectively, the "Infinity Defendants"), through their attorneys, **ROBERTS LEVIN ROSENBERG PC**, respectfully submit the following Cross Motion for Partial Summary Judgment pursuant to Fed.R.Civ.P. 56(a):

## I.      INTRODUCTION

Colorado Casualty Insurance Company ("Colorado Casualty") owed Paul Howard, Jonathan Howard, and Infinity Land a defense of all the claims asserted against them in El Paso County District Court Case No. 2008cv4553 (the "Underlying Action"). The insurer failed to provide that defense until approximately one month before trial, and then three weeks later

improperly filed this action in which it announced to its insureds that the defense was not owed. Because the operative pleadings alleged claims that were arguably covered under the applicable Colorado Casualty businessowners policy, the Infinity Defendants are entitled to judgment as a matter of law that Colorado Casualty was required to defend them in the Underlying Action.

## IIA.    MOVANT'S STATEMENT OF MATERIAL FACTS

The history of this case is long and convoluted; however, a brief recitation of the events leading up to the filing of the pleadings is highly useful to understanding the case and this Motion and is included here for that reason.

H2 Land Co., LLC ("H2"), Howard Family Investments, LLC ("HFI"), and certain other entities acquired several parcels of land in eastern Colorado Springs (the "Properties") beginning in approximately 2003.  Originally, the Properties were part of one contiguous parcel owned by Thomas E. and Joan Cantrell (collectively, the "Cantrells"), who divided the larger parcel into smaller parcels and sold those individually over several years.

In 2005, H2 and HFI (and others) sold the Properties to the predecessor-in-interest of KF 103[1] to develop a residential subdivision called Cumbre Vista.  KF 103's title examiner discovered in February 2005 that when the Cantrells sold off the individual parcels, they left in their name a "spite strip" of land along the southern border of, and zig-zagging north and east through, Cumbre Vista.  To this leftover parcel was attached a Right of Way Deed that was filed by the Cantrells in 1956, and that created an easement in favor of "adjoining landowners."  It was this easement (the "Easement") that was at the center of the dispute with the Neighbors.

None of the Infinity Defendants or other developer parties were aware of the Easement until after the grading on Sorpresa was finished but in the meantime, Paul Howard acquired the

---

[1] Both KF 103 and its predecessor-in-interest are referred to herein as KF 103, unless otherwise noted.

spite strip in fee simple through a quit claim deed from Mr. Cantrell. He conveyed the portion of the spite strip running through Cumbre Vista to KF 103 on November 11, 2005, and conveyed the remaining east–west portion of the spite strip to H2 by quit claim deed dated October 18, 2005. H2 eventually conveyed its interest in the spite strip to Woodmen Heights Metropolitan District Nos. 1, 2, and 3 ("Woodmen Heights") by deed dated March 6, 2008 in the midst of the conflict with the Neighbors.

That conflict was the product of construction work completed, directly and indirectly, by Infinity Land. As a condition of the sale of the Properties to KF 103, the sellers were required to improve the roads around the perimeter of Cumbre Vista. One of those roads was Sorpresa, which included its intersection with Ski Lane (the "Intersection"). Sorpresa, which was contiguous with the east–west portion of the spite strip, was an unimproved 30-foot dirt road. Ski Lane, which existed on the zig-zag portion of the spite strip, was also an unimproved 30-foot dirt road. The landowners whose parcels were situated south of Sorpresa and to the immediate east and west of Ski Lane (the "Neighbors") used the Intersection to access their properties prior to and during 2005.

As one of the entities owned by the Howards - who had become personal guarantors to the sales contracts with KF 103 – Infinity Land provided the "boots on the ground" support for the construction activities required to improve the perimeter roads. The original plans called for the elevation of Sorpresa to be lowered 10-12 feet at the Intersection, and grading to that depth on the northern section of the road was accomplished by the summer of 2007. The Neighbors began opposing the plans that had been submitted to and approved by the City of Colorado Springs for the construction of Sorpresa at or about that time. The Neighbors asserted safety issues as the basis for their concerns, and prodded the City to make certain changes to the design. Negotiations

extended for several weeks with the Neighbors, during which time the issue of what interest the Neighbors held in the spite strip arose. Eventually the City directed Infinity Land (and RS Construction & Development) to construct a "u-turn" several feet to the east of the Intersection to connect the upper half of Sorpresa at the original elevation to the lower half of Sorpresa at the newly created, lower elevation. Construction plans were approved by the City in April 2008.

Discussions for a full and final resolution of the parties' dispute carried on for several weeks afterwards, while Infinity Land proceeded to implement the u-turn intersection. Those discussions effectively ended on September 4, 2008, when Woodmen Heights and KF 103 filed their Complaint to Quiet Title Pursuant to C.R.C.P. 105 and for Declaratory Judgment Pursuant to C.R.C.P. 57 (the "Quiet Title Complaint"), seeking to quiet title to the spite strip in their names. Woodmen Heights and KF 103 further sought a declaration that as fee simple owners of the spite strip, they had the right to alter and relocate Sorpresa and the Easement under *Roaring Fork Club, L.P. v. St. Jude's Co.,* 36 P.3d 1229 (Colo. 2001). Finally, the Quiet Title Complaint alleged that the Neighbors had breached a settlement agreement concerning the alterations to Sorpresa and its related easement).

The Neighbors asserted counterclaims in response, as well as third-party claims against Infinity Land, H2, HFI, and Paul Howard that were eventually dismissed. A trial was held on the in October 2010 on the remaining claims, at the conclusion of which the court found against KF 103 and Woodmen Heights on all claims.

Paul Howard and Jonathan Howard, H2, and HFI were dragged back into the Underlying Action in 2011 by way of the KF 103 Complaint that named each of them as defendants to claims for breach of contract, negligence, negligent misrepresentation, and contribution. Neighbors William and Maureen Marchant, Marilyn J. Howell, and C. Arlene Nance filed their Second

Amended Counterclaim and Third Party Complaint (the "Marchant Complaint") at the insistence of the trial court on July 17, 2012. Neighbor William M. Peck's Third Amended Counterclaim and Third Party Complaint (the "Peck Third Party Complaint") was dated July 18, 2012, and purports to incorporate the Marchant Complaint. Neighbor Susan Hanson "adopted" or joined in both pleadings, as did Darrell and Kelly Ann Oliver. (Collectively, the Neighbors' pleadings against the are referred to as the "Neighbors' Complaints"). The Neighbors' claims were premised on the same set of facts that KF 103 alleged in its complaint.

The Howards tendered the KF 103 claims to Colorado Casualty in November 2011. Colorado Casualty denied the Howards their defense on the ground that the named insured – Infinity Land – was not named as a party and the Howards were not named "in their capacity as officers and directors" of Infinity Land. While Colorado Casualty accepted the defense of Infinity Land and the Howards in response to the tender of the Neighbors' claims in August 2012, the insurer immediately filed the instant declaratory judgment action to affirm its declaration that it owed no duties to defend or indemnify in connection with the Underlying Action.

## II(B). UNDISPUTED FACTS

1.     Colorado Casualty insured Infinity Land under businessowners policy number BP 0571316 01 from June 20, 2007 to June 20, 2008 (the "Policy"). A true and correct copy of the Policy is attached as **Exhibit A.** The Policy was renewed from June 20, 2008 to June 20, 2009.

2.     A true and correct copy of the Individual Answer and Counterclaim of William M. Peck filed October 9, 2008 is attached as **Exhibit B**.

3.     A true and correct copy of the Individual Answer and Counterclaim of William and Maureen Marchant  dated October 20, 2008 is attached as **Exhibit C**.

4.     A true and correct copy of the Individual Answer and Counterclaim of the Marilyn J. Howell Trust dated  October 7, 2008 is attached as **Exhibit D**.

5.     A true and correct copy of the Individual Answer of Darrell H. and Kelly Ann Oliver filed October 20, 2008 is attached as **Exhibit E**.

6.     A true and correct copy of the Individual Answer of Susan Hanson filed November 4, 2008 is attached as **Exhibit F**.

7.     A true and correct copy of the Answer of Defendant, C. Arlene Nance, to Complaint to Quiet Title Pursuant to CRCP 105 and for Declaratory Judgment Pursuant to CRCP 57 filed November 12, 2008 is attached as **Exhibit G**.

8.     A true and correct copy of the Third Amended counterclaim and Third Party Complaint of William M. Peck dated July 18, 2012 is attached as **Exhibit H**.

9.     A true and correct copy of the Defendants' Second Amended Counterclaim and Third Party Complaint of William and Maureen Marchant, Marilyn J. Howell, and C. Arlene Nance dated July 17, 2012 is attached as **Exhibit I**.  Exhibit H and Exhibit I are collectively referred to as the "Neighbors' Complaints."

10.     A true and correct copy of the KF 103 Complaint, dated September 15, 2011, is attached as  **Exhibit J.**

11.     The Letter of Understanding referenced in the KF 103 Complaint is attached as **Exhibit K.**

12.     Colorado Casualty refused to provide a defense to the KF 103 Complaint.  **Exhibit L.**

13.     Colorado Casualty purported to accept the defense of Infinity Land and the Howards to the Neighbors' Complaints by reservation of rights letters dated September 26, 2012, and October 10, 2012.  **Exhibits M, N**.

14.     Colorado Casualty adjuster Steven Best's notes of his investigation of the carrier's duty to defend are attached as **Exhibit O.**  Mr. Best learned that Paul Howard was the President, Jonathan Howard was the Secretary/Treasurer, and that they owned Infinity Land.  Colorado Casualty had no information that contradicted those facts.

15.     A true and correct copy of the Quiet Title Complaint is attached as **Exhibit P.**

16.     This declaratory judgment action was filed by Colorado Casualty on October 16, 2012.

### III.     LEGAL ARGUMENT

Under well-established legal principles, Colorado Casualty was obligated to defend (a) the Howards against the claims asserted in the KF 103 Complaint, and (b) Infinity Land and the Howards against the claims asserted in the Neighbors' Complaints.  The Infinity Defendants are entitled to judgment as a matter of law accordingly.

### A.     Summary Judgment Standard.

Summary judgment is proper when the movant shows that no genuine dispute as to any material fact exists and the movant is entitled to judgment as a matter of law on those facts. F.R.C.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322  (1986); *Flannery v. Allstate Ins. Co.,* 49 F.Supp.2d 1223, 1225-26 (D.Colo. 1999).   Whether an insurer's duty to defend was triggered is an issue of law that is determined by applying the substantive law of Colorado in this case.  *See, e.g., United Fire & Cas. Co. v. Boulder Plaza Residential, LLC,* 633 F.3d 951, 956, 961 (10th Cir. 2011).

## B.     The Duty to Defend.

As in most commercial liability policies, the Policy provides that Colorado Casualty has the duty to defend its insureds against any lawsuit seeking damages because of bodily injury, property damage, and personal injury.   SUF § 1, p. CCIC000009.   The duty to defend requires an insurer to affirmatively defend its insured against pending claims.[2] *See, e.g., Cyprus Amax Minerals v. Lexington Ins.*, 74 P.3d 294, 299 (Colo. 2003).

"[A]n insurer's duty to defend an insured is triggered solely on the basis of the allegations made within the four corners of the complaint, read against the insurance policy." *Boulder Plaza, id.* at 960.   This standard also applies to anticipatory declaratory actions brought before the conclusion of an underlying dispute. *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.,* 90 P.3d 814, 828 (Colo. 2004).   If the complaint alleges facts that even potentially trigger coverage, then the insurer must provide a defense to the entire action. *Cyprus Amax*, 74 P.3d at 299; *see also, Compass Ins. v. City of Littleton,* 984 P.2d 606, 613–14 (Colo. 1999); *AIMCO v. Nutmeg Ins. Co.,* 593 F.3d 1188, 1193 (10th Cir. 2010).   When determining whether it owes a duty to defend, an insurer must also consider all facts of which it is aware in related pleadings.   *See AIMCO*, *supra,* 593 F.3d at 1193–94.   And it is indeed the factual allegations, rather than legal claims pleaded, that determine an insurer's duty to defend. *Gerrity Co. v. CIGNA Prop. & Cas.,* 860 P.2d 606, 607 (Colo. App. 1993).   Nor can insurers rely on conclusory allegations devoid of facts to justify their denial of a defense. *Woods v. Nationbuilders Ins. Services,* 2012 WL 4478948 at *5–6 (D.Colo. Sept. 27, 2012) (not reported) (when complaint alleged that defendant was an employee but was "devoid of any *factual allegations* relevant to [that legal] determination," insurer could

---

[2] The duty to indemnify differs from the duty to defend, obligating the insurer to satisfy a judgment entered against the insured. *Constitution Assoc. v. N.H. Ins. Co.*, 930 P.2d 556, 563 (Colo. 1996). The duty to indemnify arises only when the policy covers the harm and typically cannot be determined until resolving the underlying claims. *Cyprus Amax*, 74 P.3d at 301.

not rely on employee exclusion as justification for refusal to defend). "[W]here the insurer's duty to defend is not apparent from the pleadings in the case against the insured, but the allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim." *Hecla Mining,* 811 P.2d 1083, 1089 (Colo. 1991); *see also Cyprus Amax,* 74 P.3d at 299; *Sims v. Sperry,* 835 P.2d 565, 569 (Colo. App. 1992).

Once the insured proves a claim potentially falls within a policy's coverage, the burden switches to the insurer to establish the allegations are solely within an exclusion. *Cotter Corp., supra,* 90 P.3d at 829. Coverage provisions are to be liberally construed to provide the broadest coverage, but exceptions thereto "must be defined in 'clear and explicit terms.'" *AIMCO v. Nutmeg Ins.,* 593 F.3d 1188, 1197 (10th Cir. 2010) (quoting *Hecla Mining,* 811 P.2d at 1090). Thus, an insurer seeking to avoid its duty to defend bears a "heavy burden" that comports with the insured's legitimate expectation of a defense. *Thompson v. Maryland Cas.,* 84 P.3d 496, 502 (Colo. 2004). An insurer cannot escape its duty to defend unless there exists no factual or legal basis on which the insurer *might* eventually be held liable to indemnify its insured. *Hecla Mining v. N.H. Ins.*, 811 P.2d 1083, 1090 (Colo. 1991).

When an insurer believes the allegations do not fall within a policy's coverage, the insurer should nevertheless "provide the defense to the insured under a reservation of its rights to seek reimbursement should the facts at trial prove that the incident resulting in liability was not covered by the policy, or to file a declaratory judgment action after the underlying case has been adjudicated." *Hecla Mining*, 811 P.2d at 1089.

**C.    The KF 103 Complaint Triggered Colorado Casualty's Duty To Defend The Howards.**

    **1.    The Claims Asserted Against The Howards In The KF 103 Complaint Are Based On Their Duties As Officers And Directors Of The Named Insured, Infinity Land.**

It goes without saying that in order for the duty to defend to be triggered, the person requesting the defense must qualify as an insured. Here, Infinity Land's "'executive officers' and directors" are insureds "with respect to their duties as . . . officers or directors." SUF ¶ 1, Ex. A, p. 000017.

KF 103 did not include Infinity Land in its Complaint, but the Howards were named as defendants. While the KF 103 Complaint did not expressly state that the Howards were being sued "in their capacities as officers and directors of Infinity Land," Colorado law does not require the use of any such magical, conclusory phrases in order to trigger an insurer's duty to defend. Rather, the determination is to be made from a review of the allegations of fact in the pleadings. And those allegations indicate that any specific activities that were carried out by the Howards were done as part of their duties as officers or directors of Infinity Land.

For instance, the KF 103 Complaint referenced the Neighbors' counterclaims,[3] and the Neighbors' counterclaims clearly alleged that any individual altering the Intersection did so as an officer or director of the various entities involved. Indeed, Mr. Peck's "counterclaim" named Paul Howard as "President of Infinity Land Corporation" and identified Infinity Land as the "prime developer of the Cumbre Vista Subdivision and adjacent streets that specifically involve the Deeded Right of Way, and as such is a party to damage to the Neighbors." SUF ¶ 2, **Ex. B, pp. 11–12, ¶¶ 6, 15.** Mr. Peck also described in his pleading the letter he authored and addressed to Paul

---

[3] *See* SUF ¶ 10, Ex. J, ¶ 30.

Howard at "Infinity Land Development," which detailed certain damage to his property and which included his objection to lowering Sorpresa.  SUF ¶ 2, **Ex. B, p. 14, ¶ 25.**[4]

Any remaining doubt about whether KF 103 named the Howards in their official capacities dissipated when Colorado Casualty's adjuster, Steven Best, contacted undersigned counsel Bradley A. Levin on January 27, 2012, and was advised, according to Mr. Best, that Paul Howard "was sued in his capacity as an officer of our named insured, Infinity Land Corporation."   SUF ¶ 14, **Ex. O, p. 2.**   Mr. Levin reiterated this to Mr. Best four days later, and advised that "Jonathan Howard is [Infinity Land's] secretary/treasurer and that he was served in his capacity as such." *Id.* Mr. Levin provided additional information about the Howards' ownership of Infinity Land, and Mr. Best noted "Infinity Land Corp was not named but probably should have been per Mr. Levin." *Id.*  Colorado Casualty had no information contradicting these facts.  *Id.*

All the information available to Colorado Casualty, including the KF 103 Complaint and prior pleadings and the clarification provided by the Howards' representatives, indicated that the Howards were being sued by KF103 with respect to their duties as Infinity Land's officers and directors.  Accordingly, they were insureds under the Policy.

### 2.    The KF 103 Complaint Alleged Property Damage.

The Policy provided the Howards, as executives and directors of Infinity Land, with defense coverage against allegations of physical injury to or loss of use of tangible property.   SUF ¶ 1, **Ex. A, p. 22.** "[T]angible property is that which is capable of being handled, touched, or physically possessed." *Lamar Truck Plaza v. Sentry Ins.*, 757 P.2d 1143, 1144 (Colo. App. 1988).

---

[4] Mr. Peck also named other individuals in their official, rather than individual capacities. SUF § 2, **Ex. B, p. 12, ¶ 16** (naming Charlie Williams "as President of Land Development for Infinity Land Corporation" as a defendant to the same counterclaims).

For nearly a century, Colorado's supreme court has recognized real estate as tangible property. *See, e.g., Radetsky v. Jorgensen*, 202 P. 175, 175 (Colo. 1921).

Here, the KF 103 Complaint alleged that when the Howards constructed the Intersection, they altered the historical location, grade, and elevation of that land and the underlying Easement. SUF ¶ 10, **Ex. J, ¶¶ 14, 20–22.**[5] Further, KF 103 alleged that the alterations to the Intersection supported the Neighbors' counterclaims against KF 103, and sought contribution from the Howards if the court held it liable on the Neighbors' counterclaims. *Id.,* **¶¶ 30, 40, 42.** Thus, KF 103 alleged that the Howards were liable to it for physical injury to tangible property (*i.e.*, alteration of real estate).

The Policy also requires property damage to have been caused by "an occurrence", which it defines as an "accident". SUF ¶ 10, **Ex. A, pp. 21, 56.** Generally, the term "occurrence" is to be "broadly construed against the insurer." *Fire Ins. Exch.,* 953 P.2d at 1301. The Policy does not define the term "accident" and so the generally accepted meaning of that word may be utilized in the analysis. *See, e.g., Bohrer v. Church Mut. Ins.,* 965 P.2d 1258, 1262 (Colo. 1998). The generally accepted meaning to be applied here is "an unanticipated or unusual result flowing from a commonplace cause[.]" *Union Ins. v. Hottenstein,* 83 P.3d 1196, 1201 (Colo. App. 2003). "A consequence that follows from being on the land may be unintentional despite the fact that being on the land is intentional." *Gibson v. Farm Family Mut. Ins. Co.,* 673 A.2d 1350, 1353 (Me. 1996) (allegations of physical trespass as part of effort to interfere with neighbors' sale of land sufficiently alleged claim for loss of use of land caused by occurrence to trigger insurer's duty to

---

[5] The Neighbors specified further that these changes involved lowering Sorpresa by 10-12 feet. SUF **¶ 9, Ex. I, ¶ 1.** *See AIMCO*, 593 F.3d at 1193–94 (insurer cannot disregard facts alleged in other complaints of which it is aware in assessing whether it has a duty to defend).

defend).[6] Thus, the relevant inquiry is whether the Howards intended to interfere with the Neighbors' property rights when constructing the Intersection.

Applying those definitions here, the physical injury to the intersection and its resultant harms constitute, at least potentially, an accident. Simply put, although the Howards may have intended to alter the Intersection, the Howards had no intent to violate Colorado law when doing so or to deprive the neighbors of their rights to the Easement; those were unanticipated consequences that flowed from the intended act of altering the land. KF 103 pleaded no facts suggesting otherwise. To the contrary, KF 103 alleged that the Infinity Defendants *negligently* constructed the Intersection without obtaining the proper authorization to do so legally. SUF ¶ 10, **Ex. J, ¶¶ 43–46.** Similarly, in the Quiet Title Complaint KF 103 and Woodmen Heights sought to enforce a settlement agreement with the neighbors regarding the Intersection's design, which, if enforced, would have granted them permission to do as they did. SUF ¶ 15, **Ex. P, ¶¶ 44–58.**

Thus, the KF 103 Complaint allows for the possibility that the physical alteration of the Intersection was an accident because the unanticipated consequence of the Intersection's construction was that it violated Colorado law, namely *Roaring Fork*. As such, the KF 103 Complaint alleged a potentially covered claim for property damage, triggering Colorado Casualty's defense obligation.

### 3. The KF 103 Complaint Alleged Personal Injury.

The KF 103 Complaint's allegations also triggered the Policy's personal injury coverage. Under the Policy, Colorado Casualty agreed to defend suits seeking damages because of "personal injury" "caused by an offense arising out of your business" that was committed during the policy period in the coverage territory. SUF ¶ 1, **Ex. A, p. 41**. The Policy defines "personal injury" to

---

[6] Notably, the Policy's definition of "occurrence" does not exclude damages that flow from volitional acts.

mean "injury … arising out of … [t]he wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies, by or on behalf of its owner, landlord, or lessor … ." SUF ¶ 1, **Ex. A, p. 21.**[7] The Policy defines neither "occupies" nor "premises", and so once again the common meanings of these words apply. *Bohrer*, 965 P.2d at 1262. An "occupier" is "one who is in the enjoyment of a thing," while "occupy" means, *inter alia,* "to hold or keep for use; … to tenant; … to do business in; … ." *Black's Law Dictionary* 1079 (Editorial Staff, 6th ed. 1990). "Premises" means, *inter alia*, "A house or building, *along with its grounds*." *Black's Law Dictionary* 1300 (Deluxe 9th ed. 2009) (emphasis added). The Policy defines "coverage territory" to include the entire United States. Accordingly, Colorado Casualty's duty to defend was triggered if the underlying pleadings alleged a claim based on a wrongful eviction, wrongful entry, or invasion of the right of private occupancy regarding the Easement, committed between June 20, 2007 and June 20, 2008. The facts pleaded in the KF 103 Complaint articulate such a claim.

The Intersection's construction without the Neighbors' or the court's prior permission (as dictated by *Roaring Fork*) was either a "wrongful entry" onto or "wrongful eviction" from the Easement under any commonsense meaning of those undefined terms. The pleadings establish that the land the Easement sits on top of constitutes the "premises" the Neighbors were "occupying" with the permission of Woodmen Heights.[8] The core allegation in the Underlying Action was that by altering the Intersection's grade, elevation, and location without the requisite authorization, the Infinity Defendants (and others) deprived the Neighbors of their right to use the

---

[7] The plain and ordinary meaning of this language is that coverage is triggered by any one of three acts: (1) a wrongful eviction; (2) a wrongful entry; or (3) an invasion of the right of private occupancy, so long as the claimant occupies the room, dwelling, or premises in question and the acts are carried out by or for the owner, landlord, or lessor of the premises.

[8] The Intersection was owned at that time by Woodmen Heights. SUF ¶ 105, **Ex. P, ¶¶ 15–20.**

Intersection as it had been historically deeded to them. SUF ¶ 10, **Ex. J, ¶¶ 15–17, 20–22, 40–42, 44–45;** SUF ¶ 8, **Ex. H, pp. 19–20.** Accordingly, the KF 103 Complaint alleged claims based on the either the Infinity Defendants' wrongful entry onto the Easement or the wrongful eviction of the Neighbors from the Easement. Either way, a person of ordinary intelligence would have understood those claims to implicate the Policy's personal injury coverage, triggering Colorado Casualty's duty to defend. *See Blackhawk-Central City Sanitation Dist. v. American Guarantee and Liability Ins. Co.,* 856 F.Supp. 584 (D.Colo. 1994), *overruled on other grounds,* 214 F.3d 1183 (10th Cir. 2000); *see also, Valley Imp. Ass'n. v. U.S. Fidelity & Guar.,* 129 F.3d 1108, 1117 (10th Cir. 1997) (applying New Mexico law, finding insurer owed duty to defend claims based on trespass of cattle and overgrazing under policy's coverage for "personal injury," under similar definition); *Century Sur. v. Seductions, LLC,* 609 F.Supp.2d 1273, 1281 (S.D. Fla. 2009) (noting wrongful entry and wrongful eviction claims involve eviction by owner or landlord, or wrongful entry in derogation of the plaintiff's ownership, tenancy, or easement); *Kitsap County v. Allstate Ins.,* 964 P.2d 1173 (Wash. 1998), *en banc* (claims for trespass and nuisance arising out of contaminants and foul odors constituted "wrongful entry" under CGL policy); *Great Northern Nekoosa Corp. v. Aetna Cas. & Surety,* 921 F.Supp. 401, 408–418 (N.D. Miss. 1997).

Thus the KF 103 Complaint was a suit seeking damages because of personal injury, and Colorado Casualty was obligated to defend the Howards as a result.

> **D.  The Neighbors' Complaints Triggered Colorado Casualty's Duty To Defend Infinity Land And The Howards.**

Like the KF 103 Complaint, the Neighbors' Complaints alleged potentially covered claims for property damage, personal injury, and bodily injury, triggering Colorado Casualty's defense obligations. Indeed, Colorado Casualty admitted as much when it purported to undertake the

defense of both Infinity Land and the Howards by reservation of rights letters dated September 26, 2012, and October 10, 2012.  SUF ¶ 13, **Ex. M, N.**  The insurer's attempt to change its position in this lawsuit is without merit.

>    1.    **The Neighbors' Complaints Alleged Property Damage Caused By An Occurrence.**

Neighbors' Complaints alleged property damage caused by an occurrence for which an insured was responsible.  As with the KF 103 Complaint, it is patent that the Neighbors' claims centered on the physical alteration of the land that the Easement sat on top of.  *See* SUF ¶ 9, **Ex. I ¶¶ 31, 62, 69, 78, 80.**  Thus, the construction of the Intersection described in the Neighbors' Complaints constitutes property damage, and the resulting interference with the Neighbors' property rights in the Easement was an accident triggering Colorado Casualty's defense obligation. *See* Section III(C)(1), *supra.*

The Intersection's physical alteration was not the only property damage described in the Neighbors' Complaints, however.  Ms. Nance separately alleged that one or more parties (including Infinity Land or the Howards) "remov[ed] large quantities of soil" from her property and "constructed a road across the northern boundary of [her] property."  SUF § 9, **Ex. I, ¶¶ 109–10.**  None of allegations in support of that claim suggest any insured intended to cause that injury to Mrs. Nance's land.  *Id., ¶¶* **109–13.**  That property damage was, therefore, likewise an arguably unanticipated consequence and thus an occurrence.

Consequently, the only means by which Colorado Casualty can avoid defending these claims is to prove the property damage allegations were solely within the Policy's exclusions. *Cotter Corp.*, 90 P.3d at 829. This it cannot do.  The Policy excludes "'property damage' expected or intended from the standpoint of the insured."   SUF ¶ 1, **Ex. N, p. 000011.**  Looking at the factual allegations in the pleadings, however, to the segregation of the conclusory declarations that

are unaccompanied by any allegations of supporting facts, the property damage claims are not solely and exclusively within the Expected or Intended Injury exclusion.

Regardless of the legal claims pleaded in the Neighbors' Complaints, the core factual allegation was that Infinity Land and the Howards breached the standard of care for land developers by failing to obtain the requisite preauthorization to construct the Intersection. SUF ¶ 8, 9, **Ex. H, ¶ 52, referencing Ex. I, ¶¶ 70, 71, 77–80, 85.** The Neighbors' Complaints contained no facts demonstrating Infinity Land or the Howards intended to deprive the Neighbors of their rights to the Easement, remove soil from land belonging to others, or create the Intersection in violation of any common or statutory laws. Indeed, the only facts pleaded regarding the Intersection's alteration are found in paragraph 62 of the Marchant Complaint:

> Plaintiffs and Third Party Defendants, intentionally entered upon or caused others to enter upon Defendants' Easements and to unilaterally alter the historic roadway and topography of the land within the Easements without permission of the Defendants and the other easement owners as the dominant estate owners and without first obtaining judicial determination granting permission to alter the easement[.]

SUF ¶ 9, **Ex. I ¶ 62.**

These allegations do not place the property damage claims solely within an exclusion. A "unilateral" alteration means only that it was "done or undertaken by one person or party." *See, e.g.,* http://www.merriam-webster.com/dictionary/unilateral.[9] That Infinity Land or the Howards – or any other party – unilaterally altered the physical properties of the road says nothing about whether the interference with the Neighbors' rights in the land or was expected or intended by the insureds, especially in light of the allegations in the Quiet Title Complaint that the Neighbors had

---

[9] *See also Black's Law Dictionary* 1671 (9th ed. 2009) ("One-sided; relating to only one of two or more persons or things").

given their permission to proceed with that work.  SUF ¶ 15, **Ex. P, ¶ 45-58.**  Nor is the Neighbors'

occasional use of the terms "reckless", "heedless", and "wanton and willful" to describe the Infinity

Defendants' construction of the Intersection fatal to the duty to defend "because no facts were

alleged in support of those conclusory statements.  SUF ¶ 9, **Ex. I, ¶¶ 79, 84.**

Ms. Nance's trespass claim similarly does not fall solely within the Expected or Intended

Injury exclusion.  The allegations that the Infinity Defendants "intentionally" entered on the

Easement is simply an element of trespass.[10]  While the intent to be on the land is an element of

trespass, an intent to injure or an expectation of injury is not and does not inhere to an act of

trespass the way that intent must be inferred from, for example, an insured's sexual encounter with

a minor.  *See Antolovich v. Brown Group Retail,* 183 P.3d 582, 602 (Colo. App. 2007) (trespass is

an intentional tort, but liability for the same only requires the intent to do the act that constitutes

or causes the intrusion); *see also Nikolai v. Farmers Alliance Mut. Ins.,* 830 P.2d 1070 (Colo.

App. 1991).  In fact, a negligent act – *i.e.,* one that is free from the intent to harm – may be the

basis for a trespass claim.  *See Burt v. Beautiful Savior Lutheran Church of Broomfield,* 809 P.2d

1064, 1067 (Colo. App. 1990) (whether defendant's trespass was caused by a negligent act is

irrelevant).  Accordingly, courts have found that trespass allegations can trigger an insurer's duty

to defend. *Standard Const. v. Maryland Cas.,* 359 F.3d 846 (6th Cir. 2004) (alleged trespass

constitutes occurrence and triggers duty to defend); *Gibson v. Farm Family Mut. Ins.,* 673 A.2d

1350 (Me. 1996); *Lyons v. State Farm Fire & Cas.,* 811 N.E.2d 718 (Ill. App. 2004); *Lumber Ins.

v. Allen,* 820 F.Supp. 33 (D.N.H. 1993). *But see KF 103-CV v. Am. Family Mut. Ins.,* 2014 WL

4409876 *7 (D. Colo., Sept. 5, 2014) (same allegations "cannot be read as including allegations

---

[10] Trespass comprises a physical intrusion on the property of another without the proper permission. *See, e.g., Hoery v. U.S.,* 64 P.3d 214, 217 (Colo. 2003).

of an accident or unanticipated consequences" because requisite intent to do the act that causes the intrusion and because Colorado does not recognize tort of negligent trespass).

Because the Neighbors' Complaints alleged accidental physical injury to their properties and the Easement and Colorado Casualty cannot prove the claims fall solely within an exclusion, Colorado Casualty was obligated to defend the Underlying Case, regardless of whether other claims may have been excluded under the Policy. *See, e.g., Fire Ins. Exch.,* 953 P.2d at 1300; *Blackhawk-Central City Sanitation Dist.,* 214 F.3d at 1189.

### 2 The Neighbors' Complaints Also Articulate Claims For Personal Injury And Bodily Injury.

The Neighbors' claims for personal injury and bodily injury also triggered Colorado Casualty's duty to defend. SUF ¶ 1, **Ex. A, pp. 000009, 20, 21.** The operative pleadings recite that Infinity Land and the Howards blocked the Neighbors' access to and use of the Easement and the alleged prescriptive easement. SUF ¶ 9, **Ex. I, ¶¶ 21, 63–66, 69, 86.** These allegations sufficiently state claims for wrongful entry or wrongful eviction under the Policy's personal injury coverage for the reasons set forth in Section III(C)(2), *supra*.

However, the Policy also obligated Colorado Casualty to defend its insureds against the Neighbors' Complaints because they asserted facts that potentially fell under the Policy's bodily injury coverage. When an insurance policy covers "bodily injury, sickness, disease, or death", coverage for emotional distress is available if the injury is accompanied by physical manifestations. *See Williams v. State Farm Mut. Auto. Ins.*, 195 P.3d 1158, 1161 (Colo. App. 2008); *State Farm Fire & Cas. v. Nikitow*, 924 P.2d 1084, 1089 (Colo. App. 1995). The Policy provides coverage for damages because of "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time," and the Neighbors' Complaints alleged emotional distress. SUF ¶ 1, **Ex. A, p. 20;** SUF ¶ 9, **Ex. I, ¶ 62.** Although the Neighbors'

Complaints did not articulate whether the alleged emotional distress was accompanied by physical manifestations, if the facts established that was so, then the Policy would have covered it. As such, the Neighbors' claims for emotional distress were a potentially covered claim, triggering Colorado Casualty's duty to defend Infinity Land and the Howards against the Neighbors' Complaints.

## IV.    CONCLUSION

Colorado Casualty had to defend the Howards against the claims asserted by KF 103 in its Complaint, because the facts pleaded established the insureds' potential liability for property damage, personal injury, and indemnity under an insured contract. Colorado Casualty had to defend against the Neighbors' Complaints, because those too asserted potential claims for property damage and personal injury, as well as bodily injury. Having refused to defend its insureds against either of these, Colorado Casualty—as a matter of law—breached its duty to defend, entitling Infinity Land and the Howards to summary judgment on this issue.

Respectfully submitted this 15th day of April, 2015.

ROBERTS LEVIN ROSENBERG PC

s/ *Kerri J. Atencio*
Bradley A. Levin
Kerri J. Atencio
1512 Larimer Street, Suite 650
Denver, CO 80202
Telephone: (303) 575-9390
Fax: (303) 575-9385
bal@robertslevin.com
kja@robertslevin.com

*Attorneys for Defendants Infinity Land Corporation, H2 Land Co, LLC, Howard Family Investments, LLC, Jonathan Howard and Paul Howard*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 15th day of April 2015, a true and correct copy of the foregoing **INFINITY DEFENDANTS' CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT** was electronically filed with the Clerk of the Court using the CM/ECF system and served on the following by the method indicated which will send notification of said filing to the following email addresses:

Scott C. Sandberg
Jonathan M. Allen
Snell & Wilmer, LLP
1200 17th Street, Suite 1900
Denver, CO 80202
*Attorneys for Plaintiff*
*Colorado Casualty Insurance Company*

<u>*/s/ Danielle Donato*</u>
Danielle Donato