IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-02748-WYD-NYW

COLORADO CASUALTY INSURANCE COMPANY, a New Hampshire corporation,

Plaintiff,
v.

INFINITY LAND CORPORATION, a dissolved Colorado corporation;
H2 LAND CO, LLC, a dissolved Colorado limited liability company;
HOWARD FAMILY INVESTMENTS, LLC, a dissolved Colorado limited liability company;
JONATHAN HOWARD;
PAUL HOWARD;
KF 103 CV, LLC, a Colorado limited liability company;
WILLIAM MARCHANT;
MAUREEN MARCHANT;
WILLIAM E. HOWELL, as Successor Trustee of the MARILYN J. HOWELL TRUST;
C. ARLENE NANCE;
WILLIAM PECK;
DARRELL H. OLIVER;
KELLY ANN OLIVER; and
SUSAN HANSON.
Defendants.

**INFINITY DEFENDANTS' REPLY IN SUPPORT OF [DOC. NO. 146] CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendants Infinity Land Corporation ("Infinity Land") and Paul Howard (collectively, the "Infinity Defendants"), through their attorneys, **LEVIN ROSENBERG PC**, respectfully submit the following Reply in Support of [Doc. No. 146] Cross Motion for Partial Summary Judgment:

## I.     ARGUMENT

Plaintiff Colorado Casualty Insurance Company ("Colorado Casualty"), in its brief opposing the Cross Motion for Partial Summary Judgment [Doc. No. 146] (the "Cross Motion"), fails to apprehend and apply the salient definitions provided in the Policy and the rules applicable to the insurer's duty to defend. As a result, its arguments are neither cogent nor

persuasive.

### A. Colorado Casualty Owed The Howards A Defense To The KF 103 Complaint.

Colorado law required Colorado Casualty to defend the Howards against the KF 103 claims.

#### 1. The KF 103 Complaint Alleges One Or More Claims Involving The Howards' Duties As Officers And Directors Of Infinity Land.

The primary argument of substance proffered by Colorado Casualty as justification for refusing that defense of the Howards is that it was not required to consider any facts alleged in any other pleading, nor to take into account any knowledge the company acquired in the course of its investigation of its obligation to defend. *See* Response, p. 7-8. Contrary to Colorado Casualty's declarations, however, it was made aware of the Neighbors' prior pleadings by virtue of the fact that they are specifically referenced in the KF 103 Complaint; Colorado Casualty need not have undertaken any kind of "investigation" here in order to know about their existence.

Furthermore, regardless of an affirmative duty to investigate the allegations in the KF 103 Complaint, that is precisely what Colorado Casualty did. *See* SUF ¶ 14.[1] Colorado Casualty had some doubt about whether coverage was triggered, and so adjuster Steven Best set out to gather more facts. *See id.* Colorado Casualty obtained those facts, but promptly discarded them when they seemed not to fit the predetermined conclusion that there was no insured person being sued. Nothing Colorado Casualty has cited as authority in its brief gives the insurer the permission to do what it did here: investigate whether its duty to defend has been triggered, acquire facts that support the conclusion that an insured person has been named, and then

---

[1] All references to "SUF" pertain to the Statement of Undisputed Facts in the Cross Motion, unless otherwise noted.

completely reject those facts in favor of deciding that a defense is not owed because the magic words "in their capacities as officers and directors" is not included. Colorado does not require any such magic triggering words. *See* Cross Motion, p. 10-11.

The insurer knew that its named insured was involved by virtue of the information provided by the undersigned officers of the Court. Those facts may have served Infinity Land's interests but that does not make the statements false, and Colorado Casualty undeniably had nothing in its file that contradicted those statements or the allegations in the earlier pleadings. *See* Response, p. 10. Moreover, the KF 103 Complaint itself did not contain any allegations that conflicted with the conclusion that the Howards were being sued for acts undertaken as officers or directors of Infinity Land. *See* Response, p. 10. Indeed, the KF 103 Complaint did not allege that the claims were asserted against the Howards for acts as officers or directors of H2 Land Co. ("H2") or Howard Family Investments, LLC ("HFI") or in their individual capacities. Any such doubts – and clearly doubt existed, hence Mr. Best's initiation of the dialogue with counsel about its named insured's and the Howards' involvement in the underlying case – must necessarily have been resolved in favor of providing a defense at that time. *See* Cross Motion, p. 8-9. *See Hecla Mining Co., v. New Hampshire Ins. Co.,* 811 P.2d 1083, 1089 (Colo. 1991); *see also, Cyprus Amax Minerals v. Lexington Ins.,* 74 P.3d 294, 299 (Colo. 2003); *Sims v. Sperry,* 835 P.2d 565, 569 (Colo. App. 1992).

Even if Colorado Casualty was entitled to deny a defense because it was unclear about the facts alleged in the KF 103 Complaint, its doubt about Infinity Land's involvement was eliminated by the filing of the Neighbors' Complaints. By naming Infinity Land as a defendant, those pleadings made it patently clear to Colorado Casualty that Infinity Land was involved. *See* SUF ¶ 9, Exhibit I, ¶ 9. The insurer's steadfast refusal to defend at that point, then, was both

unjustified and contrary to the allegations of which it was aware from other pleadings.

### 2. KF 103's Allegations Of Change To The Location, Grade, And Elevation Of The Road Is Physical Injury To Tangible Property.

As explained in the Cross Motion, the KF 103 pleading alleged that the Howards and others constructed the Intersection and by doing so altered the location, grade, and elevation of the land. *See* Cross Motion, p. 11-12. Cutting up the ground to remove soil so as to change the grade and elevation of a road unquestionably constitutes physical injury to tangible property. KF 103 alleged that the Howards were liable to it for causing that injury through a contribution theory, and Colorado Casualty is obligated to pay "those sums the insured becomes legally obligated to pay as damages because of . . . 'property damage[.]'" SUF ¶ 1, Exhibit A, p. . That Policy language does not require the plaintiff suing the insured to own the property that is alleged to have been damaged in order to trigger coverage, so Colorado Casualty is simply incorrect that no property damage is alleged in the KF 103 Complaint. *See* Response, p. 11.

### 3. The Injury To The Land Was Arguably Caused By Accident.

But, the KF 103 Complaint must also allege that the physical injury to the land – the cutting up and grading of the dirt that the road sat on – was caused by an "occurrence." *See* Cross Motion, p. 12-13. There is no dispute from Colorado Casualty that the definition of "occurrence" for purposes of the Policy is an "unanticipated or unusual result flowing from a commonplace cause." *See* Response, p. 11. Yet, says Colorado Casualty, there can be no occurrence in this case according to *United Fire & Cas. Co., v. Boulder Plaza Residential, LLC*, 633 F.3d 951, 957 (10th Cir. 2011). *See* Response, p. 11. *Boulder Plaza* does not stand for the wholesale proposition that damages resulting from work performed by an insured does not constitute an "occurrence." Rather, that holding applies to construction defect claims for

damages arising from poor workmanship, which is something that is not alleged in the KF 103 Complaint.

Nor is Colorado Casualty correct that volitional acts can never be the predicate of an accident that will trigger property damage coverage. Reading the Policy language and the common law definition of occurrence together, the proper inquiry is whether injury to tangible property that was caused by an unanticipated or unusual result flowing from a commonplace cause is alleged. Here, it was. The cutting and scraping of the ground was the injury to tangible property, and it was because that work interfered with the Neighbors' rights to that property that the Neighbors had a claim against KF 103 and thus KF 103 against the Howards. The KF 103 Complaint does not allege that the Howards anticipated that they were interfering with the Neighbors' rights to that ground or that they intentionally chose to alter the easements without obtaining court approval.[2] Response, p. 12. To the contrary, the claim asserted by KF 103 is for negligence. SUF ¶ 10, Ex. J, ¶ 43-46. The intentional acts exclusion is a separate analysis from whether an occurrence was alleged, so those cases cited by Colorado Casualty are inapposite. Response, p. 12.

In sum, the KF 103 Complaint alleges property damage that was arguably caused by the unanticipated or unusual result of interference with another's property rights that flowed from the commonplace cause of road construction activities. These allegations triggered Colorado Casualty's duty to defend, and Colorado Casualty offers no persuasive argument to the contrary.

> **4. Allegations That The Howards' Actions Prevented The Neighbors From Using Their Rights To The Road That They Had By Virtue Of Their Easements Is Personal Injury.**

---

[2] Colorado Casualty's statement to this effect is a blatant mischaracterization of the allegations in the KF 103 Complaint.

For the reasons explained in the Cross Motion, the construction of the Intersection without prior court approval was either a "wrongful entry onto" or "wrongful eviction from" the premises that the Neighbors were occupying with legal right to do so from its owner (Woodmen Heights Metro Districts ("WHMD")) by virtue of the Neighbors' easement rights in the ground. *See* Cross Motion, p. 14-15. Thus there was "personal injury" alleged in the KF 103 Complaint that triggered the duty to defend. *Id.*

Colorado Casualty quarrels with this conclusion because of the lack of any reference to Infinity Land and thus continues with the fiction that there was no indication that the personal injury involved Infinity Land's business. *See* Response, p. 13. Again, to the contrary, Colorado Casualty knew that the acts involved Infinity Land and that the Howards' duties as officers and directors were implicated by the KF 103 Complaint, both at the time the pleading was filed and at the very least by the time the Neighbors' Complaints were tendered. Colorado Casualty's first argument fails as a result.

So does its second. Colorado Casualty overlooks the fact that the pleadings establish that the Intersection was owned by WHMD at the time the Howards conducted the construction activities that physically altered the road, and that the Howards did the construction work with the knowledge and cooperation of WHMD. *See* Cross Motion, p. 14, n. 8; *see also,* SUF ¶ 10, Ex. J ¶ 21, 24-27, 31. Thus the KF 103 Complaint arguably alleges wrongful entry onto / wrongful eviction from the ground that the Neighbors were occupying, and which was accomplished by at the Howards on behalf of the owner of the ground, WHMD. Colorado Casualty's second argument must be jettisoned as a result.

  **B.  Colorado Casualty Owed The Howards And Infinity Land A Defense To The Neighbors' Complaints.**

### 1. Physical Injury To The Road And Physical Injury To Mrs. Nance's Parcel Constitute Property Damage, And The Allegations Do Not Provide That The Insureds Intended To Cause Harm To The Neighbors.

Just as the KF 103 Complaint alleges property damage caused by an occurrence and personal injury arising out of Infinity Land's business, so do the Neighbors' Complaints trigger Colorado Casualty's duty to defend. *See* Cross Motion, p. 15-19.

Colorado Casualty repeats its protests to the contrary, but those arguments are still unavailing no matter how many flagrant misrepresentations the insurer makes about the allegations in the Neighbors' Complaints.[3] Again, *Boulder Plaza* does not stand for the proposition that damages resulting only from an insured's work can never be the basis for an "occurrence" that causes property damage for purposes of liability coverage. Because this is not a construction defect case involving allegations of poor workmanship, *Boulder Plaza* is inapposite. For the same reasons discussed above and in the Cross Motion, the cutting up of the ground was physical injury to tangible property, for which the developer defendants were alleged to be liable because it was done without the Neighbors' permission and thus in interference with their property rights. Because that interference could be found to be an unanticipated result, the Neighbors' Complaints allege an occurrence.

Even more patently, Mrs. Nance's claim for the removal of soil and the creation of a road on her parcel undeniably caused physical injury to her tangible property that allegedly was carried out by the Howards and Infinity Land. None of Mrs. Nance's allegations provide that the Howards or Infinity Land intended to take or injure property belonging to her, and thus that

---

[3] A review of those paragraphs reveal that the Neighbors' Complaints do not allege that Infinity or the Howards "intentionally and deliberately destroyed the easements," or that Infinity or the Howards "allowed complete destruction of parts of the easement." Response, p. 15. In paragraph 62 the Neighbors allege alteration to the physical, tangible property – the dirt – not to the legal property interests that constitute the easements. Paragraph 73 is expressly addressed to conduct by KF 103, not to Infinity Land or the Howards.

claim arguably states a covered claim for property damage that was an unanticipated result of the otherwise lawful construction activity engaged in.

Colorado Casualty fails to demonstrate that the allegations in the Neighbors' Complaints were solely within the Policy exclusions. As expounded on in the Cross Motion, the Court is to disregard self-serving declaratory statements without any factual support in the pleadings, no matter how many times they are repeated. And absence those, the Neighbors' Complaints do not articulate claims that are wholly barred. It is the property damage that must be intended, not the act that causes it. *See* Response, p. 18. The actual facts alleged and not the causes of action are what must be evaluated, so the inclusion of a claim couched as "trespass" does not dictate the outcome of the duty to defend analysis, especially in light of the multitude of other claims pleaded in the Neighbors' Complaints.[4] *Id. See also, Fire Ins. Exchange v. Bentley,* 953 P.2d 1297, 1300 (Colo. App. 1998) (insurer must defend entire action). The same is true, then, with respect to the inclusion of the civil conspiracy count. *See* Response, p. 19.

### 2. The Same Personal Injury Analysis For The KF 103 Complaint Applies To The Neighbors' Complaints.

Colorado Casualty makes much of the fact that the explanation of how personal injury was pleaded in the Neighbors' Complaints was contained in a single paragraph. *See* Response, p. 20-21. That explanation, however, is identical to the explanation given in the context of the KF 103 Complaint, and nothing bars Infinity Land and the Howards from referring the Court to those sections of the Cross Motion *in lieu* of reciting the arguments a second time.

---

[4] *Browning v. American Fam. Mut. Ins. Co.,* 396 F. App'x 496 (10th Cir. 2010), does not dictate a different result. The court did recite the rule that trespass claims are intentional torts. However, it also pointed out that the basis of the neighbor's trespass claim in that case was not the insured's entry onto the land whose ownership was in dispute (and, the court pointed out, might not have even been a trespass), but rather the unquestionably intentional act of destroying the materials that belonged to the neighbor. *See id.* According to the court, "[t]hese acts [of destroying the materials] are not covered by the Policy. And the duty to defend only extends to covered claims." *Id.* at 503.

8

As for the rest of Colorado Casualty's arguments, they too may be readily disposed of. The plain meaning of the definition of "personal injury" in the Policy is that the wrongful entry onto or wrongful eviction from the premises in question must have been done "by or on behalf of" the owner of the premises. In other words, the insured can trigger the personal injury coverage if he either enters on / evicts from property he owns, or enters on / evicts from property that is owned by another party if he has done so on behalf of that owner. As shown above, the wrongful entry or eviction in this case was alleged to have been committed by the Howards and Infinity Land *on behalf of* the owner of the road or the dirt – WHMD. *U.S. Fidelity and Guar. Co. v. Goodwin,* 950 F.Supp. 24 (D. Me. 1996), even if binding or persuasive authority, does not hold that the insured must own the property he is alleged to have wrongfully entered onto or evicted a party from in order to meet this definition of "personal injury." Response, p. 21. Rather, there was simply no question in that case that the insured's wrongful activity was not carried out on behalf of the owner of the property and thus, naturally, the court considered only whether the insured owned the property onto which he trespassed. *See id.* at 26-27.

The notion that Colorado Casualty can somehow disclaim coverage now by fabricating an argument that the business of Infinity Land was "the operation of an office building" is specious. Response, p. 21, n. 6. First of all, Colorado Casualty cites to no place in the record for its factual support of this statement and, perhaps more importantly, the declarations for the Policy says nothing of the sort. The Declarations are on the second page of the Policy. SUF ¶ 1, Ex. A, p. 2. There is no representation on that page that Infinity Land's business is "Office" or "an Office" as Colorado Casualty warrants. What the Declarations contain is a box in which the words "Type of Program" appear at the top, with "OFFICE" typed in below. Colorado Casualty offers no factual support for its contention that this is a representation of what business the

insured is in, or that this was language that its underwriting department interpreted to mean that Infinity Land's business was "the operation of an office building" at the time it underwrote the risk. Response, p. 21, n. 6. Indeed, not a single affidavit is attached to support the implicit contention that a representative of Infinity Land was the source of that verbiage or otherwise directed the insurer or an agent to use it for underwriting purposes. To the extent that box is intended by someone to communicate information about the insured's business, "office" is so vague a term that it could not possibly provide any meaningful input to underwriting and, to the extent it is to be relied on to determine Colorado Casualty's coverage obligations, it is a term that must be construed against the insurer and in favor of Infinity Land and the Howards. *See e.g., Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 610 (Colo. 1999).

Lastly, Colorado Casualty misapprehends the plain language of the Policy when it argues that there can be no "personal injury" because an easement does not create a right of private occupancy. Response, p. 21-22. The plain meaning of the provision, to the contrary, is that three distinct acts will constitute "personal injury": 1) the wrongful eviction from a room, dwelling, or premises; 2) the wrongful entry into a room, dwelling, or premises; or 3) invasion of the right of private occupancy of a room, dwelling, or premises. SUF ¶ 1, Ex. A, p. 2. *See TerraMatrix, Inc. v. U.S. Fire Ins. Co.*, 939 P.2d 483, 489 (Colo. App. 1997)(holding identical personal injury coverage applies only to "evictions, entries, and invasions" committed on behalf of the owner, landlord, or lessor of the property). Infinity Land and the Howards do not contend that a claim for invasion of the right of private occupancy of the easement was pleaded by the Neighbors; only that the allegations in the pleadings made out claims for wrongful eviction from and/or wrongful entry onto premises. As a result, whether an easement creates a private right of occupancy (or not) has no bearing on the determination of Colorado Casualty's duty to defend.

Respectfully submitted this 26th day of June, 2015.

                                  **LEVIN ROSENBERG PC**

                                  s/ *Kerri J. Atencio*
                                  Bradley A. Levin
                                  Kerri J. Atencio
                                  1512 Larimer Street, Suite 650
                                  Denver, CO 80202
                                  Telephone: (303) 575-9390
                                  Fax: (303) 575-9385
                                  bal@levinrosenberg.com
                                  kja@levinrosenberg.com

                                  ***Attorneys for Defendants Infinity Land Corporation, H2 Land Co, LLC, Howard Family Investments, LLC, Jonathan Howard and Paul Howard***

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 26th day of June 2015, a true and correct copy of the foregoing **INFINITY DEFENDANTS' REPLY IN SUPPORT OF [DOC. NO. 146] CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT** was electronically filed with the Clerk of the Court using the CM/ECF system and served on the following by the method indicated which will send notification of said filing to the following email addresses:

    Amy M. Samberg
    Bethany A. Gorlin
    Snell & Wilmer, LLP
    1200 17th Street, Suite 1900
    Denver, CO 80202
    *Attorneys for Plaintiff*
    *Colorado Casualty Insurance Company*

                                                            */s/ Danielle Donato*
                                                            Danielle Donato