IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.   12-cv-02748-WYD-NYW

COLORADO CASUALTY INSURANCE COMPANY, a New Hampshire corporation,

     Plaintiff,

v.

INFINITY LAND CORPORATION, a dissolved Colorado corporation;
H2 LAND CO, LLC, a dissolved Colorado limited liability company;
HOWARD FAMILY INVESTMENTS, LLC, a dissolved Colorado limited liability company;
JONATHAN HOWARD;
PAUL HOWARD;
KF 103 CV, LLC, a Colorado limited liability company;
WILLIAM MARCHANT;
MAUREEN M. MARCHANT;
MARILYN J. HOWELL, as Trustee of the MARILYN J. HOWELL TRUST;
C. ARLENE NANCE; and
WILLIAM PECK,

     Defendants.

---

**ORDER**

---

THIS MATTER is before the court on Plaintiff Colorado Casualty Insurance Company's Motion for Summary Judgment (ECF No. 103) and the Infinity Defendants' Cross-Motion for Partial Summary Judgment (ECF No. 146).  On August 12, 2015, I held a hearing on these motions.  For reasons stated on the record at the August 12, 2015 hearing and set forth below, I grant Plaintiff's motion and deny Defendants' motion.

I.    BACKGROUND[1]

By way of background, Plaintiff Colorado Casualty Insurance Company ("Plaintiff" or "Colorado Casualty") filed this declaratory judgment action to determine whether it has an obligation to defend certain parties involved in the development of the Cumbre Vista subdivision in northern Colorado Springs in connection with an underlying lawsuit. The underlying case involves a dispute between property owners and the developers of the adjacent Cumbre Vista subdivision.

A.    The Policy

Beginning June 20, 2007, Plaintiff issued a business owners policy (BP 0571316 01) to Infinity Land Corporation (the "Policy").  The Policy provides as follows:

A. Coverages

    1. Business Liability

> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage", "personal injury", or "advertising injury" to which this insurance does not apply. We may at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.
> ***
>
> b. This insurance applies:
>
> > (1) To "bodily injury" and "property damage" only if:
> >
> > > (a) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the

---

[1] Based on my careful review of the record, I make the following findings of fact.

"coverage territory"; and
(b) The "bodily injury" or "property damage" occurs during the policy period.

(2) To:

(a) "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you; . . . .

\*\*\*

(ECF No. 103, Ex. 1 at 1).

C. Who Is An Insured

1. If you are designated in the Declarations as:

\*\*\*

d. An organization other than a partnership, joint venture or limited liability company, you are an insured.  Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

\*\*\*

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not show as a Named Insured in the Declarations.

(ECF No. 103, Ex. 1 at 17).

B. Exclusions

1. Applicable To Business Liability Coverage

This insurance does not apply to:

a. Expected Or Intended Injury
"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. . . .

\*\*\*

(ECF No. 103, Ex. 1 at 11).

F. Liability And Medical Expenses Definitions

\*\*\*

    **12.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

    \*\*\*

    **15.** "Property damage" means:

        **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
        **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

\*\*\*

(ECF No. 103, Ex. 1 at 19).

    B.   <u>The Underlying Lawsuit</u>

    The underlying lawsuit began in September 2008 as a state court quiet title and declaratory judgment action filed by developer parties Woodmen Heights and KF 103. Woodmen Heights and KF 103 were involved in the construction of a residential subdivision location in northern Colorado Springs.  Woodmen Heights and KF 103 named the Neighbors as defendants in the Quiet Title Complaint.  The Neighbors were various property owners with interests in certain easements that were the subject of the Quiet Title Complaint.

    The Quiet Title Complaint alleged that Woodmen Heights was the owner of an Express Easement "which is the thirty (30) foot strip of land. . . ."  (ECF No. 103, Ex. 2 at ¶ 2).  "The Express Easement is a dirt road, portions of which are rarely used."  (ECF No. 103, Ex. 2 at ¶ 24).  KF 103 owns certain property adjoining the Express Easement,

known as the Cumbre Vista subdivision.  (ECF No. 103, Ex. 2 at ¶ 3).  The Neighbors

own certain real property adjoining the Express Easement.  (ECF No. 103, Ex. 2 at ¶¶

7-12).   In the Quiet Title Complaint, Woodmen Heights and KF 103 sought judicial

approval to relocate the Express Easement and the Possible Prescriptive Use

Easement to facilitate the construction of paved roadways, effectively destroying the

Neighbors' easements.  (ECF No. 103, Ex. 2 at ¶¶ 39-43).

In September 2010, the case was ultimately tried to the El Paso County District

Court.  The primary issue at trial was whether the Easements could be relocated.  The

district court found that Woodmen Heights and KF 103 had already altered the

roadways, effectively destroying the Neighbors' Easements.  The district court

concluded that Woodmen Heights and KF 103 significantly impacted and trespassed

upon the Easement and ordered that Woodmen Heights and KF 103 restore the

roadways to the position they were in before the alteration unless some other

accommodation could be reached with the Neighbors.  (ECF No. 103, Ex. 3).

Following the El Paso County District Court's Order, on September 15, 2011, KF

103 filed a third party complaint against the RS Holding Company, LLC f/k/a Infinity

Holding Company, LLC; H2 Land Co, LLC; Howard Family Investments, LLC; Paul

Howard; Jonathan Howard, Scott Hente; and Robert Ormston (collectively referred to as

the "KF 103 Defendants"), alleging breach of contract, contribution, negligence, and

negligent misrepresentation.  The third party complaint alleged that KF 103 purchased

the property that became the Cumbre Vista subdivision from the KF 103 Defendants.

KF 103 also alleged that on January 5, 2009, the KF 103 Defendants entered into an

agreement with KF 103 whereby they agreed to indemnify KF 103 for all costs and fees

incurred in connection with the litigation and any judgment entered against KF 103.  KF 103 also alleged that the KF 103 Defendants acted negligently by suggesting that KF 103 should be involved in the original action against the Homeowners as an adjoining landowner.  (ECF No. 103, Ex. 4).

Infinity Land Corporation, the named insured under the operative insurance policy issued by Plaintiff, was not named as a party in KF 103's third party complaint.  However, Infinity Land Corporation was later named as a party by the Neighbors in their pleadings, filed in 2012.  One group of Neighbors (the Marchants, Howell, and Nance) filed a "Second Amended Counterclaim and Third Party Complaint," naming various parties, including Infinity Land Corporation.  (ECF No. 103, Ex. 6).  Neighbor Peck, who proceeded *pro se* in the underlying case, filed a separate pleading captioned "Peck's Third Amended Counterclaim and Third Party Complaint."  (ECF No. 103, Ex. 7).  Peck incorporated the factual allegations set forth in the Marchant/Howell/Nance pleading, and based on those allegations, asserted claims of his own.  Neighbors Oliver and Hanson, also proceeding *pro se*, did not file their own pleadings, but instead simply joined in the relief requested by Neighbors Marchant, Howell, Nance, and Peck in their respective pleadings.

The Neighbors asserted the following claims: (I) trespass and continuing trespass; (ii) negligence; (iii) restoration of the easements; (iv) negligent misrepresentation; (v) prescriptive easement; (vi) civil conspiracy; and (vii) breach of contract.  The primary relief sought by the Neighbors was the restoration of the Easement back to the form and location in which it existed prior to its alteration or destruction.  Alternatively, the Neighbors sought damages in the amount it would cost to

restore the Easements.  They also sought damages for the alleged diminution in value

and loss of use of their property as a result of the alteration and destruction of the

Easements.  Finally, they alleged emotional distress and mental anguish.

On August 21, 2012, after the Neighbors filed their various pleadings naming

Infinity Land Corporation as a defendant, Infinity Land Corporation's counsel again

tendered the claims to Colorado Casualty.  On September 26, 2012, Colorado Casualty

accepted the defense under a reservation of rights, specifically reserving the right to

"decline coverage and/or withdraw from any defense of this case on behalf of Infinity

Land Corporation and Messrs. Paul and Jonathan Howard as the principals of Infinity

Land Corporation, and seek reimbursement for defense costs and fees from Infinity

Land Corporation and Messrs. Paul and Jonathan Howard in defending this matter, in

the event it is determined there is no coverage for this loss, under the referenced

insurance policy."  (ECF No. 103, Ex. 11).  On October 10, 2012, Colorado Casualty

issued an amended reservation of rights letter.  (ECF No. 103, Ex. 12).

     C.    The Instant Declaratory Judgment Action

On October 16, 2012, Plaintiff Colorado Casualty filed the instant declaratory

judgment action prior to the commencement of the October trial in the underlying action.

On December 19, 2012, Colorado Casualty filed an amended declaratory judgment

complaint against Defendants Infinity, the Howards and the Infinity Affiliates, KF 103,

and the Neighbors.  In the Amended Complaint, Colorado Casualty sought a

determination that there is no duty to defend or indemnify Infinity, the Howards, H2 and

HFI under the terms of the business owners insurance policies.

Due to ongoing issues related to the underlying litigation, on November 21, 2013,

Magistrate Judge Boland recommended that this matter be administratively closed for a period of time, which I affirmed and adopted.  On April 25, 2014, this matter was reopened for further proceedings.  Plaintiff Colorado Casualty now files this motion seeking a determination of its defense obligations under the Policy.  On April 15, 2015, Defendants' filed their cross motion for summary judgment.

II.    STANDARD OF REVIEW

Pursuant to rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Equal Employment Opportunity Comm. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).  "When applying this standard, the court must 'view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.'"  *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (quotation omitted).  "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'"  *Id.* (quotation omitted).  Summary judgment may be granted only where there is no doubt from the evidence, with all inferences drawn in favor of the nonmoving party, that no genuine issue of material fact remains for trial and that the moving party is entitled to judgment as a matter of law.  *Bee v. Greaves*, 744 F.2d 1387 (10th Cir. 1984).  The court's function is not to weigh the evidence, but merely to determine whether there is sufficient evidence favoring the

nonmovant for a finder of fact to return a verdict in that party's favor.  *Anderson*, 477

U.S. at 251–52.

III.    ANALYSIS

    A.    Duty to Defend

    Plaintiff argues that it does not owe a duty to defend Infinity Land Corporation

("Infinity"), Paul Howard and Jonathan Howard ("The Howards"), H2 and HFI under the

terms of the operative insurance policy.  I note that at the August 12, 2105 hearing,

counsel for the Defendants conceded that both H2 and HFI were not owed a defense by

Colorado Casualty in connection with the underlying action.  Thus, I grant summary

judgment on Plaintiff's Third Claim for Relief.

    "As a general rule under Colorado law, an insurer's duty to defend an insured is

triggered solely on the basis of the allegations made within the four corners of the

complaint, read against the insurance policy."  *United Fire & Cas. Co. v. Boulder Plaza*

*Residential, LLC*, 633 F.3d 951, 960 (10th Cir. 2011); *see also Cotter Corp. v. Am.*

*Empire Surplus Lines Ins. Co.*, 90 P.3d 814, 829 (Colo. 2004).  To show that the insurer

owed a duty to defend, "the insured need only show that the underlying claim may fall

within policy coverage."  *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 614 (Colo.

1999) (internal citations and quotations omitted).  To establish no duty to defend, an

insurer bears a "heavy burden."  *Hecla Mining*, 811 P.2d at 1089.  The insurer must

show that "there is no factual or legal basis on which the insurer might eventually be

held liable to indemnify the insured."  *Id.* at 1090.  Where policy exclusions are at issue,

"the insurer bears the burden of establishing that 'the allegations in the complaint are

solely and entirely within the exclusions in the insurance policy.' "  *Cotter Corp.*, 90 P.3d

at 829 (citation omitted).   Accordingly, where "there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim."  *City of Littleton*, 984 P.2d at 613–14.  The existence of a duty to defend is a question of law.  *See Bumpers v. Guar. Trust Life Ins. Co.*, 826 P.2d 358, 360 (Colo. App.1991); *see also Carl's Italian Rest. v. Truck Ins. Exch.*, 183 P.3d 636, 639 (Colo. App. 2007).

The interpretation of an insurance policy is also a legal question.  *Allstate  Ins. Co. v. Huizar*, 52 P.3d 816, 819 (Colo. 2002).  An insurance policy is a contract, which should be interpreted consistently with the well-settled principles of contractual interpretation.  *Chacon v. Am. Family Mut. Ins. Co.*, 788 P.2d 748, 750 (Colo. 1990). The words of the contract should be given their plain meaning according to common usage, and strained constructions should be avoided.  *Allstate Ins. Co. v. Starke*, 797 P.2d 14, 18 (Colo. 1990).  Clauses or phrases should not be viewed in isolation; rather, a policy's meaning must be determined by examining the entire instrument.  *Huizar*, 52 P.3d at 819.  Policy provisions that are clear and unambiguous should be enforced as written.  *Chacon*, 788 P.2d at 750.  Where a term in an insurance policy is ambiguous or susceptible to more than one reasonable interpretation, the Court will construe the term against the drafter and in favor of providing coverage to the insured.  *Sachs v. Am. Family Mut. Ins. Co.*, 251 P.3d 543, 546 (Colo. App. 2010).

1.    <u>The Howards</u>

I first consider the parties' arguments concerning whether Paul Howard and Jonathan Howard ("The Howards") are covered under the Policy issued to Infinity Land

Corporation ("Infinity").  It is undisputed that The Howards are not named insureds

under the Policy issued to Infinity.  Thus, they seek coverage under the following Policy

provision:

### C. Who Is An Insured

> 1. If you are designated in the Declarations as:
>
> ***
>> d. An organization other than a partnership, joint venture or
>> limited liability company, you are an insured. Your "executive
>> officers" and directors are insureds, but only with respect to
>> their duties as your officers or directors. Your stockholders
>> are also insureds, but only with respect to their liability as
>> stockholders.
> ***
>
> No person or organization is an insured with respect to the conduct of any
> current or past partnership, joint venture or limited liability company that is
> not show as a Named Insured in the Declarations.

(ECF No. 103, Ex. 1 at 19).

The Howards argue that the KF 103 Complaint triggered Plaintiff's duty to defend

them because the claims asserted by KF103 are based on The Howards' duties as

officers and directors of Infinity.  While The Howards acknowledge that the KF 103

Complaint "did not expressly state that the Howards were being sued in their capacities

as officers and directors of Infinity Land," they ask me to look beyond the KF 103

Complaint's four corners arguing that Plaintiff's duty to defend was triggered by

information in additional documents.  (ECF No. 146 at 10).  First, the Howards point to

counterclaims filed by the Neighbors in 2008[2] ("2008 Neighbor Counterclaims") that

---

[2] The 2008 Neighbor Counterclaims are different than the Neighbors' Complaints
filed in 2012, which are the subject of this dispute.

refer to Paul Howard as President of Infinity Land Corp.  (ECF No. 146, Ex. B at 12, ¶

15).  Second, The Howards cite statements made by their counsel to Plaintiff's adjuster

that The Howards were being sued in their capacities as officers or directors of Infinity

Land Corp.  (ECF No. 146, Ex. O at 2).

The Tenth Circuit has made it clear that "under Colorado law, an insurer's duty to

defend an insured is triggered solely on the basis of the allegations made within the four

corners of the complaint, read against the insurance policy."  *United Fire*, 633 F.3d at

960.  "The Colorado Supreme Court has 'consistently held that an insurer's duty to

defend arises solely from the complaint in the underlying action.' "  *Id.* (citing *Cotter*

*Corp.*, 90 P.3d at 827).  "A court 'determining whether a duty to defend exists . . . must

restrict its examination to the four corners of the complaint.' "  *Id.* (citing *Miller v. Hartford*

*Cas. Ins. Co.*, 160 P.3d 408, 410 (Colo. App. 2007)).  However, the Tenth Circuit has

recognized certain, narrow exceptions to this general rule.  *See AIMCO v. Nutmeg Ins.*

*Co.*, 593 F.3d 1188 (10th Cir.  2010); *Pompa v. Am. Fam. Mut. Ins. Co.*, 520 F.3d 1139

(10th Cir.  2008).  Relevant to this case, in *AIMCO*, the Tenth Circuit carved out an

exception, "considering extrinsic evidence in the form of an 'allegation contained in

several separate but factually related complaints.' "  *United Fire*, 663 F.3d (citing *AIMCO*,

593 F.3d at 1190).  "The *AIMCO* court predicted that the Colorado Supreme Court

would recognize a narrow exception to the four-corners rule 'requiring an insurer to

consider facts which it is aware of in parallel complaints that tend to show a duty to

defend' as this would not undercut an insured's legitimate expectation of a defense."  *Id.*

(citing *AIMCO*, 593 F.3d at 1194).

Based on my careful review of the relevant record, I find that the *AIMCO*

exception does not apply in this case.  First, in *AIMCO*, the complaints at issue were filed within a year of one another and were active.  Second, the Tenth Circuit found that the insurer was aware the complaints were related through its denial of coverage letters that made reference to the other complaints.  *AIMCO*, 593 F.3d at 1196.  Here, the 2008 Neighbor Counterclaims were filed in 2008 and then dismissed in 2010, well before the KF 103 Complaint was filed in October 2011 and subsequently tendered to Plaintiff.  Further, Plaintiff states that neither Infinity Land nor The Howards ever tendered to it the 2008 Neighbor Counterclaims or made it aware of these matters.  I am also unpersuaded by The Howards' argument that the KF 103 Complaint put Plaintiff on notice as to the 2008 Neighbor Counterclaims.  In fact, in carefully reviewing the KF 103 Complaint, I note that under the heading "The Current Posture of the Lawsuit," paragraph 30 states that "The Neighbors have asserted counterclaims in this case against KF 103 ranging from negligence to trespass arising as a result of the Infinity Group's construction of the Intersection."  (ECF No. 103, Ex. 4, ¶ 30).  The  2008 Neighbor Counterclaims were dismissed from the case in March 2010, and the KF 103 Complaint was filed in late 2011.  Thus, I cannot find that this vague reference provided Plaintiff with reasonable notice of parallel complaints triggering the *AIMCO* exception.

Finally, since The Howards offer no legal support for their assertion that Plaintiff should have relied on self-serving statements made by their counsel that The Howards were being sued in their capacities as officers or directors of Infinity Land Corp, this argument is rejected.  Accordingly, I find Plaintiff had no duty to defend The Howards in the underlying lawsuit under the Policy issued to Infinity.

      2.   <u>Property Damage</u>

-13-

I next consider the parties' arguments concerning property damage coverage under the policy.  The Policy covers property damage of an insured if there was property damage and that property damage was the result of an occurrence.

The Policy contains the following grant of coverage:

A. Coverages

    1. Business Liability

        a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage", "personal injury", or "advertising injury" to which this insurance does not apply. We may at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

        \*\*\*

        b. This insurance applies:

            (1) To "bodily injury" and "property damage" only if:

                (a) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; (emphasis added) and
                (b) The "bodily injury" or "property damage" occurs during the policy period.
            (2) To:

                (a) "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you; . . . .

      \*\*\*

(ECF No. 103, Ex. 1 at 9).

F. Liability And Medical Expenses Definitions

\*\*\*

> 12. "Occurrence" means an accident, including continuous or repeated
> exposure to substantially the same general harmful conditions (emphasis added).

\*\*\*

(ECF No. 103, Ex. 1 at 21).

> The term "property damage" is defined in the Policy as:
>
> a. Physical Injury to tangible property, including all resulting loss of use of
> that property. All such loss of use shall be deemed to occur at the time of
> the physical injury that caused it; or
> b. Loss of use of tangible property that is not physically injured. All such
> loss of use shall be deemed to occur at the time of the "occurrence" that
> caused it.

(ECF No. 103, Ex. 1 at 22).  "Occurrence" is defined under the Policy as, "an accident,

including continuous or repeated exposure to substantially the same general harmful

conditions." *Id.*

Under Colorado law, an accident is considered to be "an unanticipated or

unusual result flowing from a commonplace cause." *Union Ins. Co. v. Hottenstein*, 83

P.3d 1196, 1201 (Colo. App. 2003) (citing *Carroll v. CUNA Mut. Ins. Soc'y*, 894 P.2d

746, 753 (Colo. 1995)).  "[I]t is the 'knowledge and intent of the insured' that make

injuries or damages expected or intended rather than accidental." *Hoang v. Monterra

Homes LLC*, 129 P.3d 1028, 1034 (Colo. App. 2005) (quoting *Hecla*, 811 P.2d at 1088)

(rev'd on other grounds, 149 P.3d 798 (Colo. 2007)).

Applying Colorado law, I review the underlying complaints to determine whether

they contain a factual or legal basis to conclude that the claimed property damage

resulted from an occurrence.  I first consider allegations that may be related to physical

injury to the property at issue.

The Marchant/Howell/Nance pleading alleges the following in part:

1.    "By deeds dated June 2, 1956 and recorded June 6, 1956 in Book 1573 at Page 596 of the records of El Paso County and August 20, 1956 and recorded on August 24, 1956 in Book 1587 at Page 149, Thomas and Joan Cantrell granted to [the Neighbors] a thirty foot (30') right of way to and over the real property therein described (the 'Express Easement')."  (ECF No. 103, Ex. 6 ¶ 18).

2.    "Commencing in the late 1950's and/or early 1960's, [the Neighbors] and/or their predecessors began to use that portion of Ski Lane between El Glen and Cowpoke Road. (the "Prescriptive Easement").  The Express Easement and the Prescriptive Easement are collectively referred to as the 'Easements' . . . ."  (ECF No. 103, Ex. 6 ¶ 19).

3.    "Defendants use of the Easements was uninterrupted until approximately June, 2006, when [the Developer Parties] blocked access to all of [the Neighbors'] Easements, both prescriptive and express."  (ECF No. 103, Ex. 6 ¶ 21).

4.    "Shortly prior to the destruction of [the Neighbors'] Easements, [the Neighbors] were mailed and/or given notice by agents of [the Developer Parties] notifying [the Neighbors] that their access would be 'temporarily' interrupted."  (ECF No. 103, Ex. 6 ¶ 23).

5.    "The notice of a temporary interruption was false in that [the Developer Parties] deliberately or recklessly failed to disclose to [the Neighbors] that the interruption of [the Neighbors'] Easements was intended to be permanent with the result that [the Neighbors] would not have use of their easements in the future."  (ECF No. 103, Ex. 6 ¶ 24).

6.    "After blocking [the Neighbors] from using the Easements, [the Developer Parties] threatened [the Neighbors] with litigation if [the Neighbors] refused to cooperate with the relocation of the easements." (ECF No. 103, Ex. 6 ¶ 25).

7.    "Subsequently, in September, 2008, after [the Neighbors] refused to agree to the relocation of the Easements, [Woodmen Heights and KF 103] initiated this action."  (ECF No. 103, Ex. 6 ¶ 26).

8.    "By the time [Woodmen Heights and KF 103] filed and served this lawsuit, [the Neighbors'] Easements had already been altered and/or destroyed." (ECF No. 103, Ex. 6 ¶ 27).

9.    "In filing their Complaint, [Woodmen Heights and KF 103] acknowledged that under Colorado law, [they] are required to either obtain court approval before relocating the easement or provide evidence to the court that any relocation of the easement complied with appropriate legal standards . . . ."  (ECF No. 103,

Ex. 6 ¶ 29).

10.    "[Woodmen Heights and KF 103] also represented to the Court in their complaint that only a portion of 'New Sorpresa Lane" had been constructed and that 'all conditions precedent to the bringing of this action have been performed or have occurred.'" (ECF No. 103, Ex. 6 ¶ 30).

11.    "[Woodmen Heights' and KF 103's] statements were false in that when the complaint was filed and served all of [the Neighbors] Easements had already been altered and destroyed and Sorpresa Lane had been lowered and extended through and past the Ski Land intersection and [the Neighbors'] properties." (ECF No. 103, Ex. 6 ¶ 31).

12.    [The Developer Parties] intentionally entered upon or caused others to enter upon [the Neighbors'] easements and to unilaterally alter the historic roadway and topography of the land within the Easements without permission of [the Neighbors] and the other easement owners as the dominant estate owners, and without first obtaining judicial determination granting permission to alter the easement and as such trespassed on and are continuing to trespass on [the Neighbors'] Easements and the easement rights of [the Neighbors] as dominant estate owners.  (ECF No. 103, Ex. 6 ¶ 62).

13.    Commencing at the time [the Developer Parties] blocked off [the Neighbors'] Easements and continuing to the present time, [the Developer Parties] ... have unreasonably interfered with and obstructed the Easements thus preventing [the Neighbors] from using the Easements for the purpose of ingress and egress to [the Neighbors'] properties.  (ECF No. 103, Ex. 6 ¶ 63).

14.    Unless and until enjoined and restrained by order of this court, [the Developer Parties'] interference and obstruction of the Easements will cause great and irreparable injury to [the Neighbors] because their access to their properties has been diminished.  (ECF No. 103, Ex. 6 ¶ 64).

15.    [The Developer Parties] wrongfully, unreasonably and without authorization entered onto and destroyed the easement in such a manner as to cause [the Neighbors] discomfort and annoyance and to suffer emotional distress and mental anguish in an amount which will be determined with particularity at trial. (ECF No. 103, Ex. 6 ¶ 66).

16.    Despite this knowledge, the Infinity Parties . . . unilaterally closed portions of [the Neighbors'] Easements an altered other portions of the Easement so that they were unusable.  (ECF No. 103, Ex. 6 ¶ 69).

17.    As a result of the negligence of [the Developer Parties] and the closure and

destruction of [the Neighbors'] Easements, these [Neighbors] have ben damaged by the temporary loss of use of these easements for the period when the easements were first barricaded to the time the easements are fully restored and open for use by the public.  (ECF No. 103, Ex. 6 ¶ 86).

18.   In addition to the cost of restoring [the Neighbors'] Easements as a direct and proximate result of Infinity's . . . actions these [Neighbors'] property values have also been greatly diminished and reduced, and these [Neighbors] have been greatly inconvenienced in their ability to access their properties.  (ECF No. 103, Ex. 6 ¶ 87).

19.   During the summer of 2007, one or more of the [Developer Parties] entered onto [Neighbor] Nance's property and regarded a portion of [Neighbor] Nance's property, removing large quantities of soil.  (ECF No. 103, Ex. 6 ¶ 109).

The Peck pleading alleges the following in part:

20.   **Trespass and Continuing Trespass:** The [Developer Parties] intentionally entered upon or caused others to enter upon Defendants' Easements and to unilaterally altered [sic] the historic roadway and topography of the land within the Deeded Right of Way without permission of Peck and [Neighbors] Marchant, Oliver, Howell, Nance, and Hanson . . . as the dominant estate owners, and without first obtaining judicial determination granting permission to alter the Deeded Right-of-Way and as such trespassed on the easement and the easement rights of the Peck and other . . . Neighbors as dominant estate owners. (ECF No. 103, Ex. 7 ¶ 34).

After considering the above allegations coupled with my careful review of all of

the relevant allegations in the underlying complaints, I find that the Neighbors

collectively alleged that Infinity destroyed their access to the Easement that provided

them access to their homes.  However, damage to an easement is not "property

damage" under the Policy.  The term "tangible property" means "that which is capable of

being handled, touched, or physically possessed."  *Lamar Truck Plaza, Inc. v. Sentry*

*Ins.*, 757 P.2d 1143, 1144 (Colo. App. 1988) (observing that purely economic damages

are not included within the term "property damage" in a comprehensive general liability

policy); *Coregis v. DeCaro*, Nos. 99-1200, 99-1208, 2000 WL 1369845, *4 (10th Cir.

Sept. 22, 2000).  I find that an easement is an interest in land owned by another that

entitles its holder to a specific limited use or enjoyment.  It is not a tangible property

right.  Thus, I find that the allegations of damage to easement rights do not constitute

"property damage," nor do their allegations of damages stem from interference with

access to the Neighbors' residences.  Even if there was an allegation of property

damage, I believe the underlying complaints fail to contain any allegation that such

damage was the result of an occurrence under the Policy.  I find that the allegations that

Infinity intentionally acted to construct roads and intersections cannot be read as

including allegations of an accident or unanticipated consequences.  The allegations

assert intentional conduct and cannot trigger coverage for an "occurrence" under the

Policy.  Accordingly, I find that insurance coverage was not triggered because the

underlying complaints did not allege property damage resulting from an "occurrence."

      3.   <u>Personal Injury</u>

The Policy defines "personal injury" as "injury . . . arising out of . . . [t]he wrongful

eviction from, wrongful entry into, or invasion of the right of private occupancy of a

room, dwelling, or premises that a person occupies, by or on behalf of its owner,

landlord, or lessor . . . ."  (ECF No. 146-1, Ex. A at 21.7).

The Defendants argue that the developers' conduct in constructing the

intersection without the Neighbors' or the Court's prior permission was either a wrongful

entry onto or wrongful eviction from the Easement.  By altering the intersection's grade,

elevation, and location without the requisite authorization, the Infinity Defendants

deprived the Neighbors of their right to use the Intersection as it had been deeded to

them.  *See Blackhawk-Central City Sanitation Dist. v. American Guarantee and Liability*

*Ins. Co.*, 856 F. Supp. 584 (D. Colo. 1994).  On the other hand, Plaintiff argues that

Infinity is not entitled to coverage under the personal injury provision of its Policy

because there are no allegations that it is the owner, landlord, or lessor of the

easement, nor did it act on behalf of that owner, landlord, or lessor.

Considering all of the relevant allegations and Policy language in this case, I

agree with the reasoning of the Colorado Court of Appeals in the *TerraMatrix* case and

other courts and find that the Policy's personal injury provision is unambiguous and

applicable only to entries, evictions, and invasions committed by or on behalf of the

owner, landlord, or lessor.  *See TerraMatrix, Inc. v. U.S. Fire Ins. Co.*, 939 P.2d 483,

489 (Colo. App. 1997) (disagreeing with the *Blackhawk* case and holding that the

personal injury provision was unambiguous and applicable only to entries, evictions, and

invasions committed by or on behalf of the owner, landlord, or lessor); *United States*

*Fidelity & Guaranty Co. v. Goodwin*, 950 F. Supp. 24 (D. Maine 1996).  Thus, because

Infinity was not the owner of the land on which the alleged wrongful entry occurred, I

find no personal injury, and therefore, no duty to defend.

### 4. Bodily Injury

The Defendants also argue that the allegations potentially fell under the Policy's

bodily injury coverage.  In *National Casualty Co. v. Great Southwest Fire Insurance Co.*,

833 P.2d 741, 746 (Colo. 1992), the Colorado Supreme Court concluded that the term

"bodily injury," which was defined in the subject insurance policy as "bodily injury,

sickness, or disease," covers only physical injury and does not include claims for purely

nonphysical or emotional harm.  The Colorado Supreme Court held that without

allegations of physical injury, physical contact, or pain, the underlying plaintiff's claim of emotional distress did not fall within the general liability policy's coverage for bodily injury. *Id.*

Here, the Neighbors allege emotional distress, mental anguish, and physical discomfort. I find that these allegations fail to bring the claims within the Policy's definition of "bodily injury" because there are no allegations of any physical injury, physical contact, or pain.

### 5.    Defendants' Counterclaims

Finally, Plaintiff argues that because it has no duty to defend under the Policy, the Defendants' counterclaims for breach of contract and bad faith based on the alleged breach of that duty must also be dismissed. I agree. Colorado law expressly recognizes the tort of bad faith breach of an insurance contract. "The basis of the tort liability is the insurer's conduct in unreasonably refusing to pay a claim and failing to act in good faith." *Goodson v. Am. Standard Ins. Co. of Wisc.*, 89 P.3d 409, 414 (Colo. 2004). Since I find that Plaintiff had no duty to defend the Defendants in the underlying lawsuit, the counterclaims for breach of contract and bad faith are dismissed.

## IV.    CONCLUSION

Based upon the foregoing, it is

ORDERED that Plaintiff Colorado Casualty Insurance Company's Motion for Summary Judgment (ECF No. 103) is **GRANTED** and the Infinity Defendants' Cross-Motion for Partial Summary Judgment (ECF No. 146) is **DENIED.**  The Clerk shall enter judgment dismissing this action and awarding costs.

Dated:  August 26, 2015

BY THE COURT:

s/ Wiley Y. Daniel_____
Wiley Y. Daniel
Senior United States District Judge